| | |
|---|---|
| MARK HENDRIKS, Individually And On Behalf Of All Others Similarly Situated, | |
| Plaintiff, | |
| v. | **THE PPD DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY THIS ACTION IN FAVOR OF THE NORTH CAROLINA ACTIONS** |
| PHARMACEUTICAL PRODUCT DEVELOPMENT, INC., FREDERIC ESHELMAN, RAYMOND HILL, ERNEST MARIO, STUART BONDURANT, FREDERICK FRANK, TERRY MAGNUSON, VAUGHN D. BRYSON, ROBERT ALEXANDER INGRAM, RALPH SNYDERMAN, JAGUAR HOLDINGS, LLC, THE CARLYLE GROUP, HELLMAN & FRIEDMAN LLC, and JAGUAR MERGER SUB, INC., | |
| Defendants. | |

Defendants Pharmaceutical Product Development, Inc. ("PPD" or the "Company"), Frederic Eshelman, Raymond Hill, Stuart Bondurant, Frederick Frank, Terry Magnuson, Vaughn D. Bryson, Robert Alexander Ingram, and Ralph Snyderman (collectively, the "Individual Defendants," and together with PPD, "PPD Defendants") respectfully submit the following memorandum of law in support of their motion to stay this action in favor of the first-filed and near-identical proceedings pending in North Carolina state court.

## PRELIMINARY STATEMENT

By this action, Plaintiff Mark Hendriks ("Plaintiff"), a purported shareholder of an unspecified amount of PPD common stock, seeks to deprive the shareholders of PPD from deciding for themselves whether to accept a substantial cash premium in a transaction valued at $3.9 billion (the "Proposed Transaction"). If approved by a majority of PPD shareholders, shareholders will receive $33.25 in cash per share – a premium of approximately 30% over the closing price of PPD stock on the last trading day before the announcement of the Proposed Transaction. Plaintiff (and any other shareholder) who does not accept the premium price offered, can exercise North Carolina statutory appraisal rights.

The Proposed Transaction was the product of a robust bidding process and arm's-length negotiations and was unanimously approved by the PPD board of directors (the overwhelming majority of whom are indisputably disinterested, outside directors) with the advice of respected financial and legal advisors, and after the receipt of two fairness opinions. Predictably, following PPD's announcement of the Proposed Transaction, several shareholders filed suit. The

1

first two actions were filed in North Carolina state court[1] and this suit followed shortly thereafter asserting the *exact same* state law breach of fiduciary duty claims. The two state court actions were subsequently assigned to the North Carolina Business Court.

After PPD filed its Preliminary Proxy Statement on Schedule 14A (the "Preliminary Proxy"), three additional shareholder actions were filed in North Carolina state court.[2] Thus, five of the six lawsuits arising out of this transaction are currently pending in North Carolina state court and will be decided by a single judge in the North Carolina Business Court, which was established specifically to handle complex business litigation and resolve issues of North Carolina corporate law (collectively the "Business Court Actions"). Plaintiff has amended his complaint in this case in a transparent attempt to differentiate his claims, tacking on Section 14(a) and 20(a) claims under the Securities Exchange Act of 1934 (the "Exchange Act") that largely mirror the state law disclosure claims being litigated in state court. As discussed in detail in the PPD Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Expedite Discovery Proceedings, a consequence of Plaintiff's choice to assert Exchange Act claims is that the automatic stay provisions of the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737, ("PSLRA") provide for a stay of all discovery until the court rules on the PPD Defendants' anticipated motions to dismiss.

---

[1] These cases are captioned *Coyne v. Pharmaceutical Product Development, Inc.*, 11 CVS 114186 (N.C. Super. New Hanover County Ct.) (filed October 5, 2001) and *Goodman v. Eshelman*, 11 CVS 004252 (N.C. Super. New Hanover County Ct.) (filed October 10, 2011).

[2] *York County Employees' Ret. Board v. Pharmaceutical Prod. Dev., Inc.*, 11 CVS 004331 (N.C. Super. New Hanover County Ct.) (filed Oct. 17, 2011); *Neiditch v. Pharmaceutical Prod. Dev., Inc.*, 11 CVS 004334 (N.C. Super. New Hanover County Ct.) (filed Oct. 17, 2011); *Litwin v. Eshelman*, 11 CVS 004333 (N.C. Super. New Hanover County Ct.) (filed Oct. 17, 2011).

This Court should stay these proceedings in favor of the Business Court Actions. The complaints in the Business Court Actions allege, as does Plaintiff here, that the Individual Defendants breached their fiduciary duties under North Carolina law, including their state law duties of disclosure in connection with a change-of-control transaction. These issues present important and developing issues of state law that the North Carolina Supreme Court has yet to address.

Defendants respectfully request that the Court stay this case in order to permit the Business Court Actions to proceed in a coordinated and expeditious fashion for several reasons. *First*, two state complaints are first-filed. In addition, the PPD Defendants expect that all of the five state cases will be consolidated shortly and a leadership structure selected.[3] *Second*, Plaintiff raises the exact same legal issues that are being litigated in state court and seeks the same relief. *Third*, the North Carolina Business Court is uniquely suited to address issues of North Carolina corporate fiduciary law. Litigating these same issues simultaneously in two different jurisdictions would undermine North Carolina's compelling interest in resolving North Carolina corporation law issues, including the contours of the legal relationship between and among various internal corporate constituencies (*i.e.*, shareholders, directors, officers, employees, *etc.*), and the appropriate standard of review for the conduct of directors of a North Carolina corporation. This is particularly important where, as here, Plaintiff's claims involve developing issues in North Carolina's corporate governance laws.

---

[3]    *Goodman* and *Coyne* have been designated as a Business Court case and assigned to Judge James Gale. Plaintiff in *York County Employees' Retirement Board* has designated his action to the Business Court. In addition, Defendants filed papers to designate the *Neidtich* and *Litwin* cases to the Business Court on October 19, 2011.

3

*Fourth*, a stay is appropriate because neither Plaintiff nor the putative class of PPD shareholders he seeks to represent will suffer any prejudice from a stay. Plaintiff and PPD's shareholders are all part of the same putative class on whose behalf the Business Court Actions are being litigated. Plaintiff's attempt to assert individual claims (in what he essentially admits is an effort to end-run the PSLRA's automatic stay) should not change the analysis. There is no reason why Plaintiff's interests as an individual and those of the class will not be represented adequately in the Business Court Actions, eventually as part of a single certified class. Plaintiff's rights and those of the class, which arise under North Carolina law, will be fully protected in the Business Court – a court created specifically to resolve these types of disputes. Plaintiff cannot advance *any* rational justification for having representative plaintiffs pursuing the *same* claims on behalf of the *same* putative class that present the *same* factual and legal issues in *multiple* forums. PPD Defendants, however, will be prejudiced absent a stay. Litigation in multiple forums would give rise to a tremendous waste of the PPD Defendants' resources (which will be borne by PPD, and, ultimately, its shareholders), as well as this Court's.

For these reasons and as demonstrated below, the Court should enter a stay of discovery and all of the proceedings pending the resolution of the parallel actions in the North Carolina Business Court.

## BACKGROUND

### A.     The Parties.

Plaintiff purportedly holds an unspecified number of PPD shares. (Am. Compl. ¶ 11.)

Defendant PPD is a North Carolina corporation headquartered in Wilmington, North Carolina. (Am. Compl. ¶12.) PPD is a leading global contract research organization that provides drug discovery, development and lifecycle management services. (*Id.* ¶ 40.) The

4

Individual Defendants in this action are the current members of the PPD Board. (*Id.* ¶¶ 13-22.) PPD's nine (9) member Board consists of seven outside directors. (*Id.*)

Defendant The Carlyle Group ("Carlyle") is a global asset manager. (Am. Compl. ¶ 23.) Defendant Hellman & Friedman LLC is a private equity investment firm (together with Carlyle, the "Sponsors"). (*Id.* ¶ 24.) Defendant Jaguar Holdings, LLC is a Delaware limited liability company, and Jaguar Merger Sub, Inc. is a North Carolina corporation formed by the Sponsors to effect the Proposed Transaction. (*Id.* ¶¶ 25-26.)

**B.      The Proposed Transaction.**

On October 2, 2011, the Board unanimously approved a merger agreement (the "Merger Agreement") whereby PPD will be acquired by Jaguar Holdings, LLC, an entity formed by affiliates of the Sponsors. (Am. Compl. ¶¶ 56-57.) Under the Merger Agreement, PPD's shareholders will be paid $33.25 in cash per share – a premium of approximately 30% over the closing price of PPD stock on the last trading day before the announcement of the Proposed Transaction. (*Id.* ¶¶ 2, 57.) With approximately 114 million PPD shares outstanding, the value of the Proposed Transaction is $3.9 billion. (*Id.* ¶ 2.) If the Proposed Transaction is approved by a majority of PPD's shareholders and completed, Plaintiff (and any other PPD shareholder who does not wish to accept the cash premium) may exercise appraisal rights.

**C.      Plaintiff Files Suit After The North Carolina Business Court Actions Are Filed.**

Two complaints virtually identical to the one in this case were filed in North Carolina state court before Plaintiff filed suit in this Court, and all three cases stated claims based only on North Carolina state law. In this case, Plaintiff seeks to represent the same putative class of PPD shareholders as the plaintiffs in the first-filed state court cases. Days after PPD filed the Preliminary Proxy, three additional complaints were filed in North Carolina state court and Plaintiff filed his Amended Complaint in this Court. In what has become the tactic *du jour*,

5

Plaintiff predictably appended federal claims under Section 14(a) and 20(a) of the Exchange Act, despite the fact that they exactly mirror the state law disclosure claims being asserted in the Business Court Actions.

In all material respects, the allegations in the Amended Complaint before this Court and the allegations in the Business Court Actions are identical. (Copies of the state court claims are attached hereto as Exhibit A.) All six complaints are filed on behalf of the same putative classes of PPD shareholders. (Am. Compl. ¶¶ 1, 34; *Coyne* Compl. ¶¶ 1, 21; *Goodman* Compl. ¶¶ 1, 19; *York County* Comp. ¶¶ 1, 31; *Litwin* Compl. ¶¶ 1, 24; *Neiditch* Compl. ¶¶ 1, 38.) All make virtually identical conclusory allegations, including:

- that the price to be paid per share is supposedly inadequate given PPD's favorable long-term prospects (Am. Compl. ¶¶ 2, 45; *Coyne* Compl. ¶¶ 29, 38; *Goodman* Compl. ¶¶ 58-59; *York County* Compl. ¶¶ 6, 69; *Litwin* Compl. ¶¶ 40, 42; *Neiditch* Compl. ¶¶ 21, 29);

- the Merger Agreement includes deal-protection measures designed to deter third parties from making competing bids (Am. Compl. ¶¶ 68-74, *Coyne* Compl. ¶ 36; *Goodman* Compl. ¶¶ 66-74; *York County* Compl. ¶¶ 82-89; *Litwin* Compl. ¶¶ 47-50; *Neiditch* Compl. ¶¶ 30-32); and

- certain of PPD's directors are interested in the Proposed Transaction. (Am. Compl. ¶¶ 61-64; *Coyne* Compl. ¶ 40; *Goodman* Compl. ¶ 65; *York County* Compl. ¶¶ 69-73; *Litwin* Compl. ¶¶ 44-45; *Neiditch* Compl. ¶ 1.)

The same disclosure claims based on the Preliminary Proxy are also being pursued here and in the Business Court. (Am. Compl. ¶¶ 75-83; *York County* Compl. ¶¶ 97-100, 102.)

Based on these common alleged facts, the complaints assert the same purported breach of fiduciary duty claims against the Individual Defendants, and aiding and abetting claims against the Sponsors, and all seek to enjoin the Proposed Transaction. (Am. Compl. ¶¶ 99-108, 109-111; *Coyne* Compl. ¶¶ 39-47; *Goodman* Compl. ¶¶ 75-83; *York County* Compl. ¶¶ 105-108; *Litwin* Compl. ¶¶ 59-61; *Neiditch* Compl. ¶¶ 44-46.) They also all seek unspecified damages and

request the same declaratory and injunctive relief, including rescission or invalidation of the

Merger Agreement. As discussed below, all of the complaints raise important and developing

issues of North Carolina corporate governance law, several of which have yet to be addressed by

the North Carolina Supreme Court.

## ARGUMENT

## I.     DISCOVERY IS STAYED PURSUANT TO THE PSLRA AUTOMATIC STAY PROVISION.

As explained below, the Court should stay this case in its entirety pending a resolution of

the Business Court Actions. In the meantime, however, *all* discovery in this action is stayed

pursuant to the automatic stay mandated by the PSLRA, given that the PPD Defendants intend to

move to dismiss this complaint. *See* 15 U.S.C. § 78u-4(b)(3)(B) ("[A]ll discovery and other

proceedings shall be stayed during the pendency of any motion to dismiss."); *Fisher v. Kansas*,

No. 06-CV-1187 (ADS)(ETB), 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2006) (copy

attached hereto as Exhibit B) (applying automatic stay to Section 14(a) claim, explaining that

"the automatic stay of the [PSLRA] is triggered by the mere indication by defense of its intention

to file a motion to dismiss") (citation omitted); *In re DPL Inc., Sec. Litig.*, 247 F. Supp. 2d 946,

947 n.4 (S.D. Ohio 2003) (citation omitted) (explaining that the automatic stay operates "when it

is anticipated that [a motion to dismiss] will be filed in the future"); *In re Carnegie Int'l Corp.*

*Sec. Litig.*, 107 F. Supp. 2d 676, 683-84 (D. Md. 2000) (holding "[u]ntil the deadline for filing a

motion to dismiss passes, or the defendants otherwise waive their rights to file a motion, or the

Court rules on a motion to dismiss, the stay provisions are available."); *see also In re Smith*

*Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 WL 1738078, at *3 (S.D.N.Y.

June 26, 2006) (copy attached hereto as Exhibit C) (nothing that "[t]he PSRLA stay is not limited

to discovery related to securities claims. Rather, the stay applies to 'all discovery' in any 'action'

under the PSLRA's purview, regardless of whether non-securities claims are alleged."); *Riggs v. Termeer*, No. 03 Civ. 4014 MP, 2003 WL 21345183, at *1 (S.D.N.Y. June 9, 2003) (copy attached hereto as Exhibit D) (explaining that the PSLRA stay applies "equally to related state law claims").

Moreover, as explained in detail in the PPD Defendants' Memorandum of Law In Opposition to Plaintiff's Motion to Expedite Discovery, Plaintiff has failed to demonstrate that the automatic stay should be lifted.

## II.     THIS ACTION SHOULD BE STAYED IN FAVOR OF THE BUSINESS COURT ACTIONS UNDER THIS COURT'S INHERENT AUTHORITY.

The Court should exercise its inherent authority and stay this action in favor of the Business Court Actions to allow the lawsuits to proceed in a single forum.  "It is well recognized that a district court may, under its general equitable powers and in the efficient management of its dockets, grant stays." *United States ex rel. Cent. Bldg. Supply, Inc. v. William F. Wilke, Inc.*, 685 F. Supp. 936, 938 (D. Md. 1988); *see also Amdur v. Lizars*, 372 F.2d 103, 106 (4th Cir. 1967) (staying shareholder derivative action, noting "[t]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the [cases] on its docket with economy of time and effort for itself, for counsel, and for litigants") (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936)).  To that end, a district court is "under no compulsion to exercise [its] jurisdiction" where the controversy may be settled more expeditiously in state court. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).  *See also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Federal courts have inherent power to dismiss or stay a case in favor of a parallel state-court action based on considerations of "'[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" *Colo. River*,

8

424 U.S. at 817 (alteration in original and citation omitted); *see also Katz v. Enter. Solutions, Inc.*, No. 1:04 CV 1240 JCC, 2005 WL 1871176, at *2 (E.D. Va. Aug. 5, 2005) (copy attached hereto as Exhibit E) (stating the district court can "'stay proceedings in an effort to 'control the disposition of the causes on its docket with economy of time and effort for itself, for counsel and for litigants'") (citations omitted). Moreover, the stay of a federal proceeding in favor of an identical state court proceeding is an appropriate means by which to avoid unnecessary duplication of effort and judicial resources. *PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 680 (5th Cir. 1973) ("[D]uplicate litigation in federal and state courts abrades to some extent the spirit of federal-state comity … [and] concurrent litigation of the same controversy is perceived as interference."); *see also Giles v. ICG, Inc*, C.A. No. 3:11-0330, -- F. Supp. 2d --, 2011 WL 2133694, at *4 (S.D. W.Va. May 27, 2011) (copy attached hereto as Exhibit F) (courts look to "'whether the stay would promote judicial economy by avoiding duplicative litigation'") (citations omitted).

In deciding whether to stay proceedings in favor of a parallel state court action involving matters of state corporation law, courts are not bound by one particular abstention doctrine, but may stay proceedings in order to avoid interfering with a particular state's ongoing interest in overseeing and regulating its corporations. *See Neary v. Miltronics Mfg. Servs., Inc.*, 534 F. Supp. 2d 227, 230-31 (D.N.H. 2008); *Ives v. Advanced Broadband Solutions, Inc.*, C.A. No. DKC 2003-0848, 2004 WL 180043, at *3-5 (D. Md. Jan. 23, 2004) (copy attached hereto as Exhibit G); *Feiwus v. Genpar, Inc.*, 43 F. Supp. 2d 289 (E.D.N.Y. 1999). A stay of a federal court action in favor of a parallel state action is particularly appropriate where – as here – the claims in the federal action are state law breach of fiduciary duty claims arising from a proposed merger. On this basis, the Southern District of West Virginia recently stayed a federal action

9

alleging breaches of fiduciary duty in connection with a merger in deference to parallel state court proceedings, holding as follows:

> Numerous different courts now have control over multiple similar putative class actions seeking to stop a $3.4 billion transaction…. [I]t is clear that virtually the same allegations are charged against the same defendants…. [T]he same relief is sought in every action – an injunction against the proposed acquisition and compensatory damages. Requiring the defendants to defend these lawsuits separately could inject a great deal of uncertainty into the deal's already-expedited timeline. The defendants could face duplicative discovery requests and markedly different general litigation schedules in each court.

*Giles*, 2011 WL 2133694, at *5 (Exh. F).

The same reasoning applies here. Plaintiff attempts to assert claims for breach of fiduciary duty arising out of the actions of the directors of PPD, a North Carolina corporation. North Carolina law governs the important corporate legal issues central to the litigation pursuant to the "internal affairs doctrine." *See, e.g.*, *Edgar v. MITE Corp.*, 457 U.S. 624, 645-46 (1982). Because North Carolina has a strong interest in adjudicating these issues and, indeed, currently is actively doing so in the context of the Business Court Actions, it is reasonable for this Court to stay these proceedings in favor of the proceedings in North Carolina state court. *See, e.g.*, *In re Countrywide Fin. Corp. Derivative Litig.*, 542 F. Supp. 2d 1160, 1172-73 (C.D. Cal. 2008) (staying breach of fiduciary duty claims governed by state law arising from proposed merger in favor of identical claims pending in state court, which "has a well-recognized expertise in the field of state corporation law") (citation omitted); *Teamsters Local Nos. 175 & 505 Pension Trust Fund v. IBP, Inc.*, 123 F. Supp. 2d 514, 519 (D. S.D. 2000) (granting stay in favor of parallel merger-related breach of fiduciary duty claims pending in state court); *Int'l Jensen Inc. v. Emerson Radio Corp.*, No. 96 C 2816, 1996 WL 494273, at *6-7 (N.D. Ill. Aug. 27, 1996) (copy attached hereto as Exhibit H) (granting stay in favor of parallel merger-related breach of fiduciary duty claims pending in state court); *Crawford v. Seabord Coast Line R.R. Co.*, 286 F.

10

Supp. 556, 557 (S.D. Ga. 1968) (staying federal action, holding that "a state court is in a much better position to interpret their own" state's laws, and that while "parties have a right to [a federal forum], they have no right to engage the court or their adversaries in wasteful activities when another forum is available where claimed grievances may be fully and fairly heard…."}).

## III.  THE COURT SHOULD ABSTAIN UNDER THE *COLORADO RIVER* DOCTRINE.

The *Colorado River* doctrine also supports this Court abstaining in favor of the Business Court Actions.  Under the *Colorado River* doctrine, a federal court may stay or dismiss a case that is parallel to a state court proceeding in order to conserve judicial resources, promote comprehensive disposition of litigation, and maintain federal-state relations.  *Colo. River*, 424 U.S. at 817.

The following factors are considered to determine whether circumstances exist to justify *Colorado River* abstention: (1) whether either the federal or the state court has assumed jurisdiction over a res; (2) the relative inconvenience of the forums; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the extent to which federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.  *See id.* at 818; *McCreary v. Celera Corp.*, No. 11-1618 SC, 2011 WL 1399263, at *5 (N.D. Cal. Apr. 13, 2011) (copy attached as Exhibit I) (concluding that stay of federal action in favor of parallel Delaware action was appropriate under *Colorado River*).  "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983).  No single factor is determinative and "a decision to abstain does not require the presence of all of the factors." *Sto Corp. v. Lancaster Homes, Inc.*, 11 F. App'x 182, 187 (4th Cir. 2001) (upholding

*Colorado River* abstention).  "Instead, the factors are to be applied 'in a pragmatic, flexible manner with a view of the realities of the case at hand.'"  *Id.* (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 2).  An application of the factors in this case weights in favor of abstention.

**A.      The Proceedings In This Court Are Parallel To The Business Court Actions.**

To warrant abstention under *Colorado River*, the federal and state actions first must be considered "parallel."  Proceedings qualify as parallel where "'substantially the same parties litigate substantially the same issues in different forums.'"  *Sto Corp*, 11 F. App'x at 186 (citations omitted).  Each component of this standard – same parties, same issues, and different forums – is absolutely met here.

First, the proceedings here and in Business Court Actions involve the same parties.  The defendants are identical:  PPD, the Individual Defendants, the Sponsors and the merger subsidiaries. Plaintiffs are purported PPD shareholders acting on behalf of precisely the same putative shareholder class.  That the named plaintiffs are not the same individuals is a distinction with no meaningful difference because they each seek to assert claims on behalf of the exact same putative class.  The shareholder interests that Plaintiff seek to advance in this Court will be fully protected in the Business Court Actions.  *See, e.g.*, *Giles*, 2011 WL 2133694, at *5 (Exh. F) (granting stay, holding "[e]ach plaintiff purports to bring claims on behalf of the class defined as ICG's common shareholders.  Inasmuch as there are currently millions of common shares outstanding, the burden of defending a suit in a different court would not materially alter the shareholders' tactical position in proceeding with this litigation.").  Thus, this action and the Business Court Actions are "substantially similar" (and indeed, if not *identical*) and satisfy the requirements of *Colorado River*.  *See Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004) ("no meaningful distinction can be made between the [state and federal shareholder derivative] lawsuits" because "the parties' interests in the disputes are nearly identical," the company is the

12

"true party in interest in both cases" and claims are all based on "defendants'" alleged breach of their fiduciary duties); *Flanders Filters, Inc. v. Intel Corp.*, 93 F. Supp. 2d 669, 672 (E.D.N.C. 2000) (granting *Colorado River* stay in deference to parallel state proceedings, noting inclusion of a different defendant does not destroy parallelism); *Ins. Co. of Pa. v. Nat'l Union Fire Ins. Co.*, No. 02:09-CV-0401, 2009 WL 995602, at *7 (W.D. Pa. Apr. 14, 2009) (copy attached hereto as Exhibit J); *Robinson v. Ruiz*, 772 F. Supp. 212, 214 (D. Del. 1991).

Second, each of the cases concern the same issue: whether the Individual Directors acted consistent with their fiduciary obligations under North Carolina law in connection with the Proposed Transaction. (Am. Compl. ¶¶ 99-108; *Coyne* Compl. ¶¶ 39-47; *Goodman* Compl. ¶¶ 75-83; *York County* Compl. ¶¶ 102-103; *Litwin* Compl. ¶¶ 53-57; *Neiditch* Compl. ¶¶ 41-42.) The complaints also request the same relief: declaratory and injunctive relief enjoining the Proposed Transaction, and a demand for an award of unspecified damages. (Am. Compl. at Prayer For Relief, B-H; *Coyne* Compl. at Prayer For Relief, B-G; *Goodman* Compl. ¶¶ 88-98; *York County* Compl. at Prayer For Relief, B-L; *Litwin* Compl. at Prayer For Relief, B-F; *Neiditch* Compl. at Prayer For Relief, B-G.) Accordingly, the parallel proceedings requirement of *Colorado River* is met because this action and the Business Court Actions assert the same legal claims based on the same factual allegations and seek the same relief. *See Giles*, 2011 WL 2133694, at *5 (Exh. F) (granting stay of federal breach of fiduciary duty claims because "the same relief is sought in every action – an injunction against the proposed acquisition and compensatory damages"); *see also Matiyasic v. Access Controls, Inc.*, 991 F.2d 790, 1993 WL 100054, at *1 (4th Cir. Apr. 6, 1993) (attached hereto as Exhibit K) (upholding *Colorado River* stay, finding that plaintiffs "seek the same relief in both suits," and "[t]his aspect of the similarity of the actions militates in favor of abstention").

13

In short, this action and the Business Court Actions constitute parallel proceedings under *Colorado River*.

**B.      Abstention Will Avoid Duplication Of Effort And The Risk Of Conflicting Results.**

As recent decisions demonstrate, abstention in favor of the Business Court Actions is particularly appropriate in this case because the actions involve claims for breach of fiduciary duty arising from the same proposed merger.  In *Giles*, for example, the defendants moved to stay certain breach of fiduciary duty claims made under Delaware law in connection with the proposed transaction between International Coal Group, Inc. and Arch Coal, Inc. in favor of parallel litigation pending in Delaware state court.  *Giles*, 2011 WL 2133694 at *6 (Exh. F).  The court concluded that several aspects of the cases decisively favored a stay, for reasons that apply equally here.

*First*, the court determined that granting the stay of the federal action in favor of the state action would preserve the parties' and the courts' valuable resources and avoid the serious risk of conflicting judgments.  The court stated that, "[g]iven the significant complexity of the issues presented, permitting multiple courts to decide the same issues on whether the defendants breached their fiduciary duties in approving the Arch deal is judicial overkill, and harmful to all parties in this action.  *Id.* at *6.  *See also Amdur*, 372 F.2d at 107 (noting the "theory underlying stay orders is the necessity of protecting the defendant from vexatious and uneconomical litigation," as well as "concern with promoting efficient judicial administration").

Like in *Giles*, litigating the same legal issues in multiple forums in this case would invite waste and unnecessary duplication of effort and resources, the costs of which would ultimately be borne by PPD shareholders.  *See Baseline Sports, Inc. v. Third Base Sports*, 341 F. Supp. 2d 605, 610-11 (E.D. Va. 2004) (staying case, holding "disregard for judicial time and resources should not, and need not, be tolerated"); *Flanders*, 93 F. Supp. 2d at 674 (staying case to "avoid

14

unnecessary duplicative litigation and conserve judicial resources").  Forcing the PPD

Defendants to litigate in two forums, in two different cities, on different timelines and with the

risk of conflicting judgments is unfair and prejudicial to the PPD Defendants, especially when

their limited resources (including the time of their officers and directors) necessarily are focused

on matters pertaining to the consummation of this multi-billion dollar merger, including

communications with regulators and shareholders, and preparing for the business integration of

the merger partners.  *See Giles*, 2011 WL 2133694, at *5 (Exh. F) (granting stay in merger case,

holding "defendants would suffer a substantial burden if their motion was denied. . . . Requiring

the defendants to defend these lawsuits separately could inject a great deal of uncertainty into the

deal's already-expedited time line.").  In short, it would be a tremendous waste of judicial

resources to have this Court essentially replicate the efforts that the North Carolina Business

Court has made and will continue to make as the actions it is overseeing proceed.

     *Second*, the *Giles* court found that "insofar as each action requests injunctive relief, there

runs a 'risk of conflicting results in enjoining a multi-billion dollar merger' that could potentially

impact 'innumerable shareholders.'"  *Giles*, 2011 WL 2133694, at *6 (Exh. H) (quoting

*Countrywide*, 542 F. Supp. 2d at 1172).  Moreover, the court noted that it "would be unjust and

unnecessary to impose potentially incompatible standards of conduct on the defendants."  *Id.*

*See also Int'l Jensen*, 1996 WL 494273, at *6-7 (Exh. F) (staying claims seeking to enjoin

impending merger in favor of parallel claims in state court).

     Again, the same risks are present here.  This Court and the North Carolina Business

Court could rule differently on dispositive motions, as well as discovery motions, motions for

preliminary injunctions, class certification motions, *etc.*  This would place the parties, and

especially PPD Defendants, in an untenable position, possibly creating conflicting standards of

fiduciary conduct. *Baseline Sports, Inc.*, 341 F. Supp. 2d at 610-11 (noting "this duplicative litigation will no doubt present serious *res judicata* problems for either this court or the Georgia court, depending on which court first reaches the merits of the dispute. This factor weighs strongly in favor of abstention.").

*Third*, the *Giles* court emphasized the fact that the claims were pending before a court with "well-recognized expertise" in its state's corporation law, and that the parties would "benefit from the expertise of the [court in the state of incorporation] in determining whether the defendants. . . otherwise breached their fiduciary duties to ICG's shareholders. . . ." *Giles*, 2011 WL 2133694, at *6 (Exh. F). *See also Beck v. CKD Praha Holding, A.S.*, 999 F. Supp. 652 (D. Md. 1998) (granting stay in shareholder litigation, holding "state, not federal law governs all aspects of Plaintiffs' claims, giving the state court a substantially greater interest in adjudicating this controversy."); *Clark*, 376 F.3d at 687-88 (abstention appropriate under *Colorado River* because "it makes more sense" to allow a New York state court to resolve breach of fiduciary duty claims made under New York law); *Washington v. Rothenberg*, 436 F. Supp. 699 (E.D. Va. 1977) (granting stay, holding "[i]n addition to the questions of economy (not only judicial economy but also economy to the litigants…) the relationship between the federal and the State courts mandates that this Court stay its hand.").

So too here. Five cases are pending before a North Carolina court, whose laws govern this dispute. The North Carolina Business Court is well-versed in North Carolina corporate law and was created specifically to adjudicate these types of claims. *See* N.C. Gen. Rules of Practice 2.2, cmt. (discussing the "desirability of a state having a substantial body of corporate law that provides predictability for business decision making" and noting that "it is essential that corporations receive timely and well reasoned written decisions from an expert judge").

16

Moreover, as discussed below, North Carolina's interest is particularly strong here because Plaintiff's claims involve developing issues of North Carolina corporate law. And, finally, the *Giles* court noted that the state courts obtained jurisdiction over the class action merger-related claims immediately after the merger was announced and before the federal court. *Giles*, 2011 WL 2133694, at *6 (Exh. F). Likewise, North Carolina's state court in this case obtained jurisdiction first because two of the state court actions were first-filed. The *Coyne* complaint was filed October 5, 2011 and the *Goodman* complaint was filed October 10, 2011. Plaintiff did not file suit in this Court until October 11, 2011, but even then did so improperly, receiving three separate deficiency notices, which were not cured until October 18, 2011 when Plaintiff filed his Amended Complaint.

## C.    A Stay Will Not Prejudice Plaintiff.

Not only will entry of a stay advance interests of judicial efficiency, it also will cause no prejudice to Plaintiff. Although a stay will put this particular case on hold, identical proceedings – involving virtually the same claims, the same alleged facts and the same parties (including a putative class of which Plaintiff is a member), and seeking the same relief – will continue in North Carolina. *See, e.g.*, *Giles*, 2011 WL 2133694, at *5 (Exh. F). Because Plaintiff purports to be a member of the putative class in the other cases, his interests will remain fully protected if this action is stayed.

## D.    Plaintiff's Exchange Act Claims Are Merely An Attempt To Circumvent A Stay.

Plaintiff's Section 14(a) and 20(a) claims (in addition to being specious) do not preclude this Court from staying this action in favor of the Business Court Actions. Plaintiff's Section 14(a) and 20(a) claims boil down to nothing more than self-serving allegations that the Board

should have disclosed more information regarding the Proposed Transaction. (Am. Compl. ¶¶ 75-83.)[4] Thus, such a claim is premised entirely on a finding of a breach of the Board's duty of disclosure, which is encompassed in the Business Court Actions. N.C. Gen. Stat. § 7A-45.4(a)(1); *see also Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2nd Cir. 1985) (staying action because "in its essential elements the same cause of action, regardless of theory or pleadings, is asserted in both courts."). Moreover, the fact that Plaintiff has attempted to dress up one of his state law fiduciary duty claims in federal securities law clothing does not vitiate the numerous factors that compel abstention. Rather, Plaintiff's inclusion of specious Exchange Act claims for no other reason than to attempt to differentiate his case from the earlier-filed Business Court Actions in order to avoid a stay further weigh in favor of abstention. *See Am. Tank Transp. v. First People's Cmty. Fed. Credit Union*, C.A. No. HAR 94-459, 1995 WL 45676 (D. Md. Jan. 11, 1995) (copy attached hereto as Exhibit L), *aff'd mem.*, 86 F.3d 1148 (4th Cir. 1996) (stating the "Supreme Court found 'considerable merit' in the idea that 'the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*'") (citation omitted); *see also Clark v. Lacy*, 376 F.3d 682, 687 (7th Cir. 2004) (affirming district court's order staying action and holding that "[i]f we were to reach the opposite conclusion, future federal plaintiffs would have an incentive to tag on redundant and non-essential claims … to create straw distinctions with an otherwise parallel state proceeding"); *McCreary*, 2011 WL 1399263, at *5 (Exh. I) (finding that "[p]laintiff's claims differ from the other actions only by including an

---

[4]    Indeed, had Plaintiff actually read the Preliminary Proxy, he would see that the purported omissions are in fact disclosed.

Exchange Act claim" and "[p]laintiff [likely] filed th[e] action to 'gain a tactical advantage,'" which weighed in favor of granting the stay) (citations omitted).

*International Jensen Inc. v. Emerson Radio Corp.* is instructive in this regard. 1996 WL 494273, at *4 (Exh. H). In *International Jensen*, the district court abstained from considering the merits of a plaintiff's Section 14(a) claims because, as here, the plaintiff could assert his claims in a state court that was well-equipped to decide issues regarding the adequacy of disclosures. *Id.* The court ruled that "there is no justification for two courts considering the same claim under different dressings." *Id.* at *6; *see also Telesco*, 765 F.2d at 362 ("Merely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit."); *Giles*, 2011 WL 2133694, at *8 (Exh. F) (effectively staying Exchange Act claims by staying state law breach of fiduciary duty claims, denying plaintiff's motion to expedite proceedings and discovery and holding plaintiff's motion to preliminarily enjoin merger in abeyance in favor of identical proceedings in Delaware state court); *McCreary*, 2011 WL 1399263, at *5 (Exh. I) (concluding that stay of federal action, which included claims under the Exchange Act, in favor of parallel Delaware state court action was appropriate under *Colorado River*); *AvMed, Inc. v. Sheridan Healthcorp, Inc.*, C.A. No. 09-23851-CIV, 2010 WL 3008811, at *7 (S.D. Fla. July 28, 2010) (copy attached hereto as Exhibit M) (granting stay, explaining that "where … the state law is substantially similar to and provides for the same relief as the federal law, federal courts have abstained in favor of a state proceeding"); *American Tank Transp.*, 1995 WL 45676, at *7 (staying federal action even though federal claims were asserted, stating "no reason exists to question the ability of the state court proceeding to adequately protect [plaintiff's] rights").

IV.   **ABSTENTION IS ALSO APPROPRIATE UNDER *BURFORD* BECAUSE THE ACTIONS INVOLVE IMPORTANT QUESTIONS OF STATE CORPORATION LAW THAT SHOULD BE RESOLVED BY THE NORTH CAROLINA BUSINESS COURT.**

Under the principles set forth by the Supreme Court in *Burford v. Sun Oil Company*, 319 U.S. 315 (1943), abstention is appropriate if there is "timely and adequate state- court review available," and "(1) where there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Nationwide Trustee Serv. Inc. v. Lowenthal*, C.A. No. 1:10-CV-192-GCM, 2011 WL 1885634, at \*2 (W.D.N.C. May 18, 2011) (copy attached hereto as Exhibit N) (citations omitted). Not surprisingly, numerous courts have concluded that a stay is appropriate under *Burford* in matters traditionally involving the internal affairs of a domestic corporation of the state.[5] There is no reason to deviate from that precedent here.

*First*, as discussed above, the Business Court Actions are currently pending before the North Carolina Business Court, which is uniquely tasked with resolving complex and novel legal issues pertaining to North Carolina's corporation law. Plaintiff asserts the Individual Defendants are subject to a heightened standard of review as described by the Delaware Supreme Court in *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173 (Del. 1986). However, the

---

[5]    *See Caudill v. Eubanks Farms, Inc.*, 301 F.3d 658, 665 (6th Cir. 2002) (finding abstention appropriate where parallel state action involved internal affairs of corporation); *Friedman v. Revenue Mgmt. of N.Y., Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) (same); *Ives v. Advanced Broadband Solutions, Inc.*, No. Civ. A. DKC 2003-0848, 2004 WL 180043, at \*5 (D. Md. Jan. 23, 2004) (Exh. G) ("Abstention on *Burford* grounds in cases seeking equitable relief affecting corporations is a well recognized application of the doctrine."); *In re English Seafood (USA) Inc.*, 743 F. Supp. 281, 289 (D. Del. 1990) (same).

North Carolina Business Court has held that the state legislature has eliminated purported *Revlon* duties by statute. *First Union Corp. v. SunTrust Banks, Inc*, 2001 NCBC 09 ¶¶ 69-70, 2001 WL 1885686, at *20 (N.C. Super. Aug. 10, 2001) (copy attached hereto as Exh. O) ("The most reasonable interpretation of the Legislature's intent was that it intended to eliminate by statute the unidimensional requirement imposed on directors by *Revlon*.") (quoting N.C. Gen. Stat. § 55-8-30(d) ("The duties of a director weighing a change of control situation shall not be any different, nor the standard of care any higher, than otherwise provided in this section.")).

Plaintiff also asserts the PPD Defendants breached their fiduciary duty of disclosure. The North Carolina Court of Appeals only recently had the opportunity to consider such cause of action. *Ehrenhaus v. Baker*, C.A. No. COA10-1034, 2011 WL 4552351, at *19 (Oct., 4, 2011) (copy attached hereto as Exhibit P) ("We hold that North Carolina directors 'are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action.'") (citations omitted).[6] Thus, the North Carolina courts should have the opportunity in the first instance to develop a body of law on this issue.

Moreover, Plaintiff has included in his Amended Complaint identical state law claims for aiding and abetting a breach of fiduciary duty against the Sponsors as earlier asserted in the Business Court Actions. (Am. Compl. ¶¶ 109-112.) To date, North Carolina courts have not clearly recognized a claim for aiding and abetting a breach of fiduciary duty. *See Ehrenhaus*, 2011 WL 4552351, at *20 (Exh. P) (noting "it is unclear whether such a cause of action exists in North Carolina").

---

[6]   The PPD Defendants recognize that a formal mandate will not issue in this case until October 24, 2011, but have chosen to reference the case herein for the Court's reference. *See* N.C.R. App. P. 32.

To the extent that Plaintiff is arguing for an extension or reversal of state common law and attempts to seek to define the scope of a board's duty of disclosure, the North Carolina courts are the most appropriate forum to address these arguments in the first instance, as the outcome could have significant ramifications for North Carolina corporations and their fiduciaries that extend beyond this dispute. *Friedman v. Revenue Mgmt. of N.Y., Inc.*, 38 F.3d 668, 671 (2d Cir. 1994) (finding *Burford* abstention was appropriate on issue of corporation law, that adjudicating dispute would involve "needless interference with [state's] regulatory scheme governing its corporation," and that states have a "strong interest" in the "uniform development and interpretation of the statutory scheme regarding its corporations"); *Cox v. Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd.*, 669 F.2d 940, 943 (4th Cir. 1982) (noting "abstention also is appropriate where there are presented difficult and complex questions of state law which directly affect important state policy concerns, and whose importance extends beyond the case at bar"); *Ives*, 2004 WL 180043, at *5 (Exh. G) (stating the state "has a strong interest in retaining the power to govern the internal affairs of its corporations"). The North Carolina Business Court, which has well-recognized expertise in explicating and applying North Carolina's corporation laws should rule on whether the named plaintiffs have stated a viable claim and whether the $3.9 billion Proposed Transaction should be enjoined.

*Third*, the exercise of federal jurisdiction would risk inconsistent rulings and determinations about North Carolina's corporation law, including the scope of a possible duty of disclosure, and whether an aiding and abetting breach of fiduciary duty claim exists. Parallel litigation in multiple jurisdictions does not serve the interests of shareholders, and risks burdensome and inconsistent proceedings here on important, developing issues of North Carolina corporation law. *See Friedman*, 38 F.3d 668 at 671 (stating that the possibility of several

proceedings in different districts would "'plac[e] an onerous burden on the corporation'") (citations omitted).

Federal review would undermine North Carolina's efforts to establish a coherent and predictable body of law with respect to the fiduciary duties of a corporation's directors. Importantly, it bears repeating that neither Plaintiff nor the putative class he purports to represent will suffer any prejudice from a stay of this action pending the outcome of the Business Court Actions. The same putative class of PPD shareholders who are before this Court are before the North Carolina Business Court, and can more than adequately protect the interests of those shareholders. Moreover, the same legal issues and requests for relief that are before this Court are already before the North Carolina Business Court. Therefore, this action should be stayed in favor of the identical and first-filed Business Court Actions.

23

## CONCLUSION

For the foregoing reasons, PPD respectfully requests that the Court enter a stay of

proceedings pending the resolution of the parallel proceedings in the North Carolina Actions.

Respectfully submitted,

Dated: October 21, 2011

WYRICK ROBBINS YATES & PONTON LLP

/s/ Lee M. Whitman

Of Counsel:
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Edward P. Welch
Edward B. Micheletti
Michelle L. Davis
One Rodney Square
P.O. Box 636
Wilmington, Delaware 19899-0636
Phone: (302) 651-3000
Fax: (302) 651-3001

Lee M. Whitman, State Bar No. 20193
Sarah M. Johnson, State Bar No. 32752
Post Office Drawer 17803
Raleigh, North Carolina 27619
Phone: (919) 781-4000
Fax:   (919) 781-4865
lwhitman@wyrick.com
sjohnson@wyrick.com

*Attorneys for Defendants Pharmaceutical Product
Development, Inc., Frederic N. Eshelman,
Raymond H. Hill, Stuart Bondurant, Vaughn D.
Bryson, Frederick Frank, Robert A. Ingram, Terry
Magnuson, Ernest Mario and Ralph Snyderman*

24

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing *The PPD Defendants' Memorandum of Law in Support of Their Motion to Stay This Action in Favor of the North Carolina Actions* was filed with the Clerk of the United States District Court for the Eastern District of North Carolina using the CM/ECF system which will send notification of this filing and an electronic copy of same to the following (all counsel of record in the CM/ECF system):

> William E. Moore, Jr.
> bmoore@gastonlegal.com
> Gray, Layton, Kersh, Solomon, Furr & Smith, P.A.
> P.O. Box 2636
> 516 South New Hope Road
> Gastonia, NC  28053-2636
> *Counsel for Plaintiff*

Dated:  October 21, 2011

> /s/ Lee M. Whitman
> Lee M. Whitman, NC State Bar No. 20193
> WYRICK ROBBINS YATES
>   & PONTON LLP
> Post Office Drawer 17803
> Raleigh, North Carolina 27619
> Phone: (919) 781-4000
> Fax:    (919) 781-4865
> lwhitman@wyrick.com

> *Attorneys for Defendants Pharmaceutical Product Development, Inc., Frederic N. Eshelman, Raymond H. Hill, Stuart Bondurant, Vaughn D. Bryson, Frederick Frank, Robert A. Ingram, Terry Magnuson, Ernest Mario, and Ralph Snyderman..*

25